UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:12-CV-566-DJH-CHL

**ROBERT PAUL MCLEAN,**　　　　　　　　　　　　**Plaintiff/Counterclaim Defendant,**

v.

**ALERE, INC.,**　　　　　　　　　　　　　　　**Defendant/Counterclaim Plaintiff/**
　　　　　　　　　　　　　　　　　　　　　　　　**Third-Party Plaintiff**

v.

**GOMEDCO, LLC,**　　　　　　　　　　　　　　**Third-Party Defendant**

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on a motion for contempt ("Contempt Motion") (DN 55) filed by Plaintiff Robert Paul McLean ("McLean") in relation to certain discovery requests regarding records from a website, salesforce.com ("Salesforce.com" or "Salesforce"). The Contempt Motion was filed on December 1, 2014. Defendant Alere, Inc. ("Alere") filed a response (DN 62) on January 26, 2015, and McLean filed a reply (DN 65) on January 29, 2015. On April 15, 2015, the Court issued an Order ("Order for Sur-Reply") (DN 88)[1] in relation to the Contempt Motion. The Court concluded that it required additional information from Alere before it could rule on the Contempt Motion. (*See* DN 88 at 9-10.) On May 1, 2015, Alere filed a sur-reply ("Sur-Reply"). (DN 92.) The Contempt Motion is now ripe for review. For the following reasons, the Contempt Motion (DN 55) is DENIED.

---

[1] In an abundance of caution, the Court filed the Order for Sur-Reply under seal because it contained "references to and descriptions of certain documents filed under seal by the parties." (DN 88 at 1 n.2.) The Court concludes that it is unnecessary to file the instant Memorandum Opinion and Order under seal because it does not contain such "references to or descriptions of" documents filed under seal by the parties or otherwise raise concerns regarding public access to confidential or proprietary information.

## Background

In the Order for Sur-Reply, the Court reviewed the extensive procedural history underlying the Contempt Motion, the parties' briefing on the Contempt Motion itself, and the contents of the Salesforce.com-related documents that were produced by Alere to McLean and subsequently provided by McLean to the Court. The Court then ordered Alere to file a sur-reply addressing an enumerated list of topics related to its production of Salesforce.com-related documents, as well as "[a]ny additional information that Alere believes would assist the Court in reaching a ruling on the Contempt Motion." (DN 88 at 10.)

In compliance with the Order for Sur-Reply, Alere filed the Sur-Reply and a document styled, Supplemental Affidavit of Christopher High ("High Affidavit"). (DN 92, 92-1.) The Court finds that Alere has complied with the Order for Sur-Reply, as the Sur-Reply addresses each of the areas of inquiry listed by the Court. Alere's responses to the Court's inquiries are summarized below.

> 1. Whether Alere contends that its document production (DN 66) is in full compliance with the Court's Order of September 30, 2014 (DN 52);

Alere represents that it has complied in full with the Court's Orders related to production of Salesforce.com data. Alere states that it has produced all Salesforce.com data entered by McLean, Sara Riley ("Riley"), and Scott Hamama ("Hamama") "between the date that each received their user name and December 31, 2012." (DN 92 at 1 (citations omitted).) Additionally, Alere states that McLean "misrepresents" what Alere has produced. Alere contends that it produced significant Salesforce.com data, in native format, and that it agreed to produce additional documents, even before Mclean filed his initial motion to compel Salesforce.com information. (*Id.*; *see* DN 19 (McLean's motion to compel).)

2

> 2. Whether Chris High is an employee of Alere, and the nature of his role in creating the spreadsheets (DN 66) containing Salesforce.com data;

Alere states, through both the Sur-Reply and the High Affidavit, that Christopher High ("High") is an employee of Alere and works out of its Broomfield, Colorado offices. His title is "Global CRM Administrator." (DN 92 at 2; DN 92-1 at ¶¶ 2.) High states that his "duties include maintaining and implementing the CRM systems used by Alere." (DN 92-1 at ¶3.) "A CRM is a customer relationship management tool that allows a business to manage the sales relationships the business has with its customers." (*Id.*) Alere's CRM is Salesforce, "which permits Alere to collect information and data from multiple computer databases." (*Id.*)

> 3. Whether the spreadsheets (DN 66) produced by Alere contain data in its native format from Salesforce.com or whether such data was reproduced in a different format by Alere or some other entity or individual;

Alere states that the spreadsheets it produced to McLean were created "by running searches directly in Salesforce and then exporting the native data search results directly into an Excel spreadsheet." (DN 92 at 2; DN 92-1 at ¶4.) High states that the data in the spreadsheets is "native data," as it "was derived from Alere's Salesforce.com database and was exported without any manipulation or changes[.]" (DN 92-1 at ¶4.)

> 4. Whether the spreadsheets (DN 66) produced by Alere contain all data input into Salesforce.com for the individuals and date ranges required by the Court's Order of September 30, 2014 (DN 52);

As is stated above, Alere asserts that the Salesforce.com spreadsheets that it produced to McLean include "[a]ll available information entered by the three individuals at issue for the specified date ranges." (DN 92 at 2.)

> 5. If Alere contends, in response to item number (4), supra, that the data contained on the spreadsheets (DN 66) are exhaustive, an explanation as to why Alere previously represented to the Court and to McLean's counsel

3

> *that responding to the document requests regarding Salesforce.com would be burdensome and lead to an unreasonably voluminous production;*

Alere states that, were it to respond to McLean's *original* discovery requests related to Salesforce.com, such response would be unduly burdensome. (DN 92 at 2-4.) Alere asserts that only after months of discussions between counsel, conferences with the Court, and briefing did McLean agree to substantially narrow the scope of his requests for Salesforce.com data. (*Id.*; *see also* DN 88 at 4-5 (discussing September 30, 2014 Order that narrowed scope of Salesforce.com-related discovery requests).) Alere's position is that after the Court narrowed the scope of the Salesforce.com-related discovery requests, its concerns regarding burdensome production were eliminated. (DN 92 at 4.)

> 6. *An explanation as to why Alere failed to produce the documents prior to the November 14, 2014 deadline established by the Court's Order of September 30, 2014 (DN 52);*

Alere does not include in its Sur-Reply a specific response to this inquiry, but the Court construes its lengthy discussion of "additional information," addressed below related to topic "8," to include a response to topic "6" as well.

> 7. *A description of Alere's contractual arrangement with Salesforce.com, specifically, the nature of the services provided by Salesforce.com in consideration for Alere's payment of more than $1 million annually (see DN 36 at 9); and*

Alere provides, though the High Affidavit, information regarding the nature of its contractual relationship with Salesforce.com, its use of the Salesforce service, and its monthly fees related thereto. (*See* DN 92-1 at ¶¶15-17.)

> 8. *Any additional information that Alere believes would assist the Court in reaching a ruling on the Contempt Motion. (DN 55.)*

4

Alere devotes roughly two-thirds of its Sur-Reply to a section entitled, "Additional Information That Supports Denying The Motion For Contempt And Further Explains Alere's Justifications For Not Producing The Documents On Or Before November 14, 2014." (DN 92 at 5-14.) As it did in its response to the Contempt Motion, Alere draws a connection between the ongoing discovery disputes in this case and the basis for its (ultimately successful) motion to amend its answer and assert a counterclaim and third-party complaint. (*See* DN 62 (response to Contempt Motion); DN 68 (motion for leave to amend); DN 85 (granting DN 68); DN 86 (amended answer, counterclaim, and third-party complaint).)

In short, Alere asserts that McLean concealed from Alere and the Court evidence that he has been in competition with Alere. Alere states that McLean concealed such evidence by abusing the discovery process, including by failing to timely produce certain documents and by providing false information in his discovery responses. Alere represents that only after an investigation was it able to determine the nature and extent of McLean's surreptitious efforts to compete with Alere. Alere states that McLean's "pattern of misconduct supports denying the motion for contempt and further explains Alere's reticence to produce these documents before Alere could uncover what [McLean] had been concealing from discovery for almost two years." (DN 92 at 5.) Alere alleges that after briefing on the Motion to Compel was closed, McLean's counsel produced "thousands of pages of documents containing Alere's confidential, proprietary information." (*Id.* at 10.) Alere believes, based on written communications from McLean's counsel, that counsel had such documents in his possession for nearly a year before producing them, and that McLean's counsel did not review the documents prior to producing them. (*Id.*)

5

With regard to its failure to produce the Salesforce.com data prior to the November 14, 2014 deadline set by the Court, Alere asserts that leading up to the deadline, it was in the midst of conducting its investigation into McLean's misconduct. (DN 92 at 11.) The investigation included such actions as performing internet searches that revealed certain business relationships of McLean's and serving third-party subpoenas on certain entities to which Alere believed McLean was connected. (*Id.* at 11-12.) Alere states that it considered filing a motion to reconsider the Order of September 30, 2014 (DN 52) in order to limit the information it would be required to produce to McLean, but that "counsel for Alere ultimately decided to produce the Salesforce records the first day back in the office after the Thanksgiving holidays." (*Id.* at 12.)

On December 1, 2014, McLean filed his Contempt Motion *and* Alere produced the Salesforce.com-related spreadsheets. (*See generally* DN 88 (setting forth procedural history).) Alere asserts that in the days following December 1, 2014, it obtained significant information, in response to its third-party subpoenas, regarding McLean's relationship to the entities through which McLean has allegedly competed with Alere. (DN 92 at 12-14.) Alere closes by noting that after it filed its motion to amend its answer and assert counterclaims, the Court entered a stay of all proceedings. Alere states that because of the stay, it chose not to file a motion to reconsider and vacate the September 30, 2014 Order regarding production of Salesforce.com data. (*Id.* at 14.) It further states that a motion to reconsider "may not be necessary," as Alere may be able to adequately protect its interests by seeking relief on the merits of its counterclaims, but that it will likely need to file such a motion if the Court is to award sanctions and/or compel additional production of Salesforce.com data. (*Id.*)

**Discussion**

McLean asserts that the Court should hold Alere in contempt and assess sanctions and costs due to Alere's alleged failure to comply with the Court's Order of September 30, 2014. (DN 52.) McLean does not cite a procedural rule or other basis on which the Court might hold Alere in contempt. (*See generally* DN 55.) The Court construes Contempt Motion as a request for sanctions pursuant to Rule 37(b) of the Federal Rules of Civil Procedure.

Rule 37(b) governs the Court's authority to issue sanctions for parties' actions related to the discovery process. In pertinent part, the Rule provides as follows:

> **(2)** *Sanctions Sought in the District Where the Action is Pending.*
>
> > *(A) For Not Obeying a Discovery Order.* If a party or a party's officer, director, or managing agent . . . fails to obey an order to provide or permit discovery, including an order under Rule 26(f), 35, or 37(a), the court where the action is pending may issue further just orders . . . .

Fed. R. Civ. P. 37(b)(2)(A). The Rule goes on to provide a non-exhaustive list of types of sanctions that the Court may impose. *See* Fed. R. Civ. P. 37(b)(2)(i)-(vii). Such sanctions range in severity from staying proceedings until the order is obeyed, to striking a pleading or pleadings in whole or in part, to dismissing the action in whole or in part. *Id.* at (iv), (iii), (v).

The Court concludes that it will not hold Alere in contempt or impose any sanctions in connection with the production of Salesforce.com-related documents. The Court finds that Alere provided sufficient responses to each of the areas of inquiry that the Court posed in the Order for Sur-Reply. The information that Alere provided in its Sur-Reply and the High Affidavit persuade the Court that Alere has not acted in contempt of an Order of the Court. The Court finds that on December 1, 2014, Alere produced Salesforce records, reproduced directly from

their native format, that were responsive to McLean's discovery requests, as narrowed by the Court's Order of September 30, 2014. McLean appears to now have in his possession all information entered in Salesforce by McLean, Hamama, and Riley from the date on which each received a Salesforce username until December 31, 2012. It is critical to note that *by December 1, 2014, Alere produced all of the Salesforce.com information that the Court ordered it to produce*. Moreover, the Court credits Alere's assertion that even before McLean filed his Contempt Motion or the underlying Motion to Compel, Alere had already produced a significant amount of Salesforce.com data and information.

Finally, the Court recognizes Alere's position regarding the timing of its production of the Salesforce.com data. Before, on, and immediately after the date on which Alere was required to produce the Salesforce.com data, it was engaged in what it terms an "investigation" of McLean's alleged competition with Alere. This investigation, particularly responses to third-party subpoenas and additional discovery responses by McLean, formed the basis for Alere's amended answer, counterclaim, and third-party complaint. (DN 86.) The Court understands that Alere was concerned about producing what it deems confidential and proprietary information from Salesforce to McLean, who it believed was actively competing with Alere.[2]

Even so, Alere had ample opportunity to seek an extension to produce the Salesforce.com data. Alere's counsel could have approached McLean's counsel to informally request an extension, or, perhaps more realistically given the contentious nature of this case, counsel could have requested relief from the Court. Rather than to actively seek relief from the September 30, 2014 Order, Alere chose to do nothing until its counsel produced the Salesforce.com records on

---

[2] With this discussion, the Court does not comment on the merits of Alere's counterclaim or third-party complaint. The Court merely notes that it recognizes the reason for Alere's cautionary stance with respect to producing additional Salesforce.com data.

December 1, 2014, approximately two weeks after the deadline for production set by the Court. Relatedly, the Court does not accept Alere's contentions that McLean's counsel failed to comply with Local Rule 37.1 prior to filing the Contempt Motion, or that McLean's counsel's attempt to reach Alere's counsel via email during the week of Thanksgiving was somehow insufficient. As the Court has previously noted, discovery in this case has been unusually contentious. By choosing not to serve on McLean the Salesforce.com records before or in the weeks after the Court-imposed deadline, Alere should have anticipated that McLean would file a motion for contempt. Moreover, in this digital age, it is unreasonable for Alere's counsel to imply that they were unreachable by email for the entire *week* of Thanksgiving.

Nonetheless, the crucial factor in this analysis is that McLean now has in his possession all of the Salesforce-derived records to which the Court determined that he is entitled. The Court concludes that McLean was not prejudiced by an approximately two-week delay in receiving the Salesforce.com data produced by Alere. This case was stayed on February 26, 2015 to allow the Court to rule on a number of then-pending motions. (DN 73.) As set forth below, the Court will soon entertain arguments from counsel as to how this case should proceed and will take such arguments into consideration in setting new case management deadlines. McLean will have sufficient opportunity to utilize the Salesforce.com records in developing his case against Alere.

Accordingly, IT IS HEREBY ORDERED as follows:

(1) The Contempt Motion (DN 55) is DENIED.

(2) The stay entered by the Court on February 26, 2015 (DN 73) REMAINS IN EFFECT pending further Order of the Court.

(3) The Court will conduct an IN-COURT STATUS CONFERENCE on **July 21, 2015 at 1:00 p.m.** Counsel and a party or party representative for McLean, Alere, and goMedco, LLC SHALL BE PRESENT and shall be prepared to discuss the future progression of this case, including new case management deadlines and any other issues they believe should be brought to the Court's attention.

(4) Sara Riley and Michael Scott Stanley and/or their counsel NEED NOT ATTEND the July 14, 2015 hearing.

(5) All parties shall be mindful of their obligations pursuant to the stay currently in effect and pursuant to the Federal Rules of Civil Procedure and the Joint Local Rules for the Eastern and Western Districts of Kentucky. Should any party believe that it requires relief from the Court prior to the in-court status conference set for **July 21, 2015**, counsel for such party SHALL CONTACT the Court's Deputy Clerk Theresa Burch, to request a telephonic conference. No party shall file any motions or otherwise request relief from the Court without receiving advance permission from the Court.

cc: Counsel of record